[No. B193907. Second Dist., Div. Seven. Dec. 6, 2006.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DAVID P. et al., Real Parties in Interest.

694

COUNSEL

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, Tracey Dodds, Senior Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Charles L. Lindner for Real Party in Interest Maurice G.

Robbert J.F. de Klerk for Real Party in Interest David P.

Children's Law Center of Los Angeles, Jenny Cheung and Diane Iglesias for Minor Ethan G.

OPINION

**PERLUSS, P. J.**—If the juvenile court determines, for the safety of a child sex abuse victim, that contact between an offending father and the child he abused must be monitored at all times, may the court nonetheless permit the father to return to the family home where the abuse occurred by designating the nonoffending second parent as the monitor? No. The very concept of monitored visitation is fundamentally incompatible with around-the-clock in-home contact that necessarily includes periods when the designated monitor will be unavailable to perform his or her protective function. Accordingly, we grant the petition for writ of mandate filed by the Los Angeles County Department of Children and Family Services (Department) and direct respondent Los Angeles Superior Court to vacate its order permitting the offending father to return to the family home and to enter a new order prohibiting the offending father from living in, or spending the night at, the family residence until the juvenile court determines, following an adequate evidentiary hearing, that the child will not be endangered by unmonitored contact between the offending father and the child.

## FACTUAL AND PROCEDURAL BACKGROUND

In late September 2005 seven-year-old Ethan G. disclosed he had been sexually abused by Maurice G., one of his two adoptive fathers. Ethan was removed from Maurice G. on October 3, 2005 and released to David P., his other adoptive father. On October 6, 2005 the Department filed a dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (d),[1] alleging Ethan had been sexually abused by Maurice G., and David P. knew of the abuse and had failed to protect Ethan. At the detention hearing the juvenile court permitted Ethan to remain with David P. and restricted Maurice G.'s contact with his son to monitored visitation in a neutral setting. The court specifically ordered that David P. could not serve as a monitor for Maurice G.'s visits with Ethan. Those orders were continued in effect at the pretrial resolution conference (PRC) held on November 16, 2005.

The Department's jurisdiction/disposition report, submitted at the time of the PRC, indicated that David P. worked full time, with somewhat flexible hours, but usually from 10:00 a.m. to 6:00 p.m. Prior to Ethan's detention and Maurice G.'s departure from the home, Maurice G. stayed home and took care of Ethan, dressing him for school and watching him in the afternoon when he returned.

On January 5, 2006 the juvenile court sustained the petition, as amended by interlineation, finding that Ethan was a child described by section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse). The court found true the allegation Maurice G. had sexually abused Ethan "on prior occasions": "Such sexual abuse consisted of, but was not limited to, the G[.] father fondling the child's penis and masturbating the child. Further, the G[.] father viewed pornography on the Internet in the child's presence. Such conduct by the G[.] father endangers the child's physical and emotional health, safety and well-being, creates a detrimental home environment and places the child at risk of physical and emotional harm." The allegations David P. had been aware of Maurice G.'s abuse of Ethan and failed to protect him were stricken.

Immediately proceeding to disposition, the court declared Ethan a dependent child of the juvenile court and ordered him placed in the home of his parent, David P., under the supervision of the Department. Family maintenance services were ordered for Ethan and David P. Family reunification services were ordered for Maurice G., which included a child sexual abuse

---

[1] Statutory references are to the Welfare and Institutions Code.

program (CSAP),[2] individual counseling directed to case-related issues and, again, monitored visitation. The court specifically ordered Maurice G. not to reside in the family home. However, the court set a March 3, 2006 progress hearing, as well as a six-month judicial review hearing (§ 364) for June 2006, and directed the Department to address in its progress report Maurice G.'s return to the family home.[3]

By March 3, 2006, Maurice G. had enrolled in a parenting program, begun individual counseling and attended two CSAP sessions. At the progress hearing the court authorized Maurice G. to visit with Ethan in the family home (for no more than three hours per visit) and granted the Department discretion to permit David P. to monitor those visits.

In its June status review report prepared for the June 14, 2006, review hearing, the Department stated that both David P. and Maurice G. had completed their court-ordered parenting classes and were continuing with individual counseling. Maurice G. continued to attend CSAP sessions. According to the Department, the CSAP coordinator indicated he could not fully evaluate Maurice G. until he had participated in the program for six months. The Department recommended no change in Ethan's status or further liberalization of Maurice G.'s visitation: "The safety, health, and well being of Ethan continues to be an area of concern if Mr. G[.] were returned to the home at this time." The Department also recommended the court order David P. to participate in an appropriate CSAP group. On June 14, 2006, the court set the matter for a contested hearing (to be held on July 20, 2006) and

---

[2] The Department describes CSAP as a "specialized sexual abuse treatment program within the Department of Children and Family Services, which treat[s] offenders, non-offending caretakers, siblings, and victims. Its focus is on adult acceptance of responsibility for the dysfunctional relationships within the family that resulted in the child sexual abuse, also on helping the child victim[s] free themselves of guilt and inappropriate [responsibility] for the molestation."

[3] Normally, if a child has been declared a dependent child of the juvenile court and removed from the physical custody of one parent and placed in the home of the second parent, the court would set a judicial review hearing pursuant to both section 364 (for the parent with whom the child has been placed) and section 366.21, subdivision (e) (for the parent from whom the child has been removed). In this case, however, for reasons not made clear in the record presented with this extraordinary writ proceeding, although the court at disposition expressly ordered Maurice G. not to reside with Ethan, it did not formally remove Ethan from Maurice G.'s custody nor did it make the findings required by section 361, subdivision (c), to support a removal order. In those circumstances, setting a six-month review hearing under section 364 alone would appear proper. Nonetheless, again without any explanation in the record before us, the court ordered "family reunification services" for Maurice G. pursuant to section 361.5, rather than "family maintenance services" pursuant to section 362, as it did for David P.—an order that is only proper if the child has been removed from the parent's custody. None of these procedural anomalies affects our analysis of the propriety of the juvenile court's order permitting Maurice G. to return to the family home to live with Ethan but to have only monitored contact with him.

denied David P.'s request that he be allowed to act as a monitor for Maurice G.'s visits with Ethan. (David P.'s mother had been serving as monitor to this point.)

In a progress report for the contested section 364 hearing the Department attached an assessment of Maurice G. from the CSAP program, dated June 21, 2006, which stated Maurice G. had regularly attended (18 of 18 sessions) and actively participated in the program, but noted that Maurice G. "appears on some level reluctant to reveal and explore the famil[y's] dynamics." The assessment also reported Maurice G. "minimizes his participation in the molest [*sic*] but takes some responsibility," that he "is avoidant and unwilling to address core issues" and that he "presents a risk to minors if allowed unmonitored or extended contact." The contested hearing began on July 20, 2006, and was continued on August 3, 2006, and September 11, 2006, and concluded on September 25, 2006, with argument from counsel.

CSAP coordinator William Taylor testified and was extensively cross-examined during the contested hearing. Taylor testified Maurice G. had admitted touching Ethan and at the outset of the program was taking responsibility for some of his behavior. However, according to Taylor, Maurice G. insisted the touching occurred during bath time and did not admit to the sexual aspects of his conduct. As the program progressed, Maurice G. became reluctant to participate; in Taylor's view Maurice G. needed to renew his efforts to understand what the motivation was to molest the child. In Taylor's opinion, there was a possibility of reabuse; and it would be inappropriate for Maurice G. to have unmonitored contact with Ethan. Taylor also opposed the return of Maurice G. to the family home because David P., the nonoffending parent, had not attended CSAP sessions.

On cross-examination Taylor conceded Maurice G. had admitted he made a mistake, said he would never molest Ethan again and had agreed not to bathe him or let Ethan sleep with him in the same bed.

At the conclusion of the September 11, 2006 court session, over the objections of both Ethan's and the Department's counsel, the court permitted Maurice G. to have monitored overnight-weekend visits in the family home (from Friday evening to Sunday evening) and ordered that David P. could serve as monitor for those visits. The court directed that Maurice G. was not to be left alone with Ethan and explained, "If you need to bring somebody else in the house to help out with that, that's fine. If you want to put some kind of a buzzer on the child's door, there are lots of options that you would have to make sure there is no question at all that any of the orders are being violated."

Following argument by counsel at the September 25, 2006 hearing, the court found that conditions continue to exist that necessitated the court's initial intervention and ordered Ethan to remain a dependent child of the court and the home-of-parent-father (David P.) order to remain in full force and effect. In addition, once again over the objections of counsel for Ethan and the Department, the court ordered Maurice G. to return to the family home on the condition his contact with Ethan be monitored at all times. The court also ordered Maurice G. to remain in individual counseling and group therapy. Explaining its decision, the court noted that Maurice G. had fully complied with the case plan and observed, "Looking at my notes, looking at what Mr. Taylor testified to, he said that Mr. G[.] took responsibility for his actions. He said that Mr. G[.] admitted to masturbating the child and says he knew it was wrong.[4] I can't imagine anything else that we would want this man to do under these circumstances. . . . It seems to me that Mr. G[.] has addressed the issue. Perhaps got tired of addressing it." The court set the matter for a further judicial review hearing on December 19, 2006.

On September 26, 2006, this court granted the Department's request, filed with its petition for extraordinary writ and joined by Ethan's counsel, for an immediate stay of proceedings and stayed "any order permitting real party [Maurice G.] to move into or remain overnight in the family home." On October 13, 2006, we ordered respondent superior court to show cause why the juvenile court's September 25, 2006 order permitting real party Maurice G. to return to the family home should not be vacated and directed that our September 26, 2006 stay order would remain in place pending further order of this court.

## DISCUSSION

In its September 25, 2006 order the juvenile court expressly found, pursuant to section 364, subdivision (c),[5] that continued dependency jurisdiction with respect to Ethan is necessary "because conditions do continue to exist which necessitated this court's initial intervention." In this case, where the court's jurisdiction was based solely on sustained allegations that

---

[4] Although stressing Maurice G.'s assumption of responsibility for sexually abusing his son, the court did recognize that Maurice G. had never admitted his molestation of Ethan "to the extent that the court found the allegations in the amended petition."

[5] Section 364, subdivision (c), provides, "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary."

Maurice G. had sexually abused Ethan on prior occasions, that finding necessarily means the court concluded further sexual abuse of Ethan is likely to occur if the court were to terminate its jurisdiction, allowing Maurice G. to return to the family home without supervision. (See, e.g., *In re N. S.* (2002) 97 Cal.App.4th 167, 173 [118 Cal.Rptr.2d 259] [termination of jurisdiction is required under § 364, subd. (c), when "[t]here is no evidence the conditions that caused the court to take jurisdiction of [the child] still existed or would exist if jurisdiction were terminated."].) Maurice G. does not challenge that finding.

■ The risk to Ethan posed by Maurice G. was further recognized by the court's order that all visitation between Ethan and Maurice G. continue to be monitored. Indeed, the CSAP assessment dated June 21, 2006, and admitted into evidence at the section 364 hearing stated Maurice G. presents a risk to minors if allowed either "unmonitored" or "extended contact." The question raised by the Department's petition, then, is whether, in light of these express and implicit findings, permitting Maurice G. to return to live with Ethan and David P. in the family home while a substantial danger of further molestation still exists is an abuse of discretion[6] or whether, as Maurice G. and David P. insist, the express condition that all of Maurice G.'s interaction with Ethan be monitored provides adequate protection to the child. Although we are not prepared to say it could never be appropriate to permit an offending parent to live with his or her child on condition that all contact between the two remain monitored (cf. *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374, 1376 [28 Cal.Rptr.2d 705] ["[v]isitation arrangements demand flexibility to maintain and improve the ties between a parent or guardian and child while, at the same time, protect the child's well-being"]), we have no doubt under the circumstances of this case the juvenile court's order violates the court's obligation to safeguard the dependent child. (See § 362.1, subd. (a)(1)(B) ["No visitation order shall jeopardize the safety of the child."]; *In re S.H.* (2003) 111 Cal.App.4th 310, 317 [3 Cal.Rptr.3d 465] ["the parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense"].)

■ David P. is employed full time; Maurice G. was a stay-at-home parent. Even if David P. and Maurice G. are able to arrange for David P.'s mother or another responsible adult to monitor Ethan and Maurice G.'s interactions during the time David is at work, living together in the family residence will necessarily mean periods exist, even if somewhat brief (for example, when David P. is asleep or showering), when the designated monitor will be unavailable. At least when the threat to the dependent child is the likely recurrence of sexual abuse, the concept of monitored visitation is fundamentally incompatible with around-the-clock in-home contact.

---

[6] An order setting visitation terms is generally reviewed for abuse of discretion. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704 [11 Cal.Rptr.2d 290].)

## DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent Los Angeles Superior Court to vacate its order permitting Maurice G. to return to the family home on the condition his contact with Ethan is to be monitored at all times and to enter a new order prohibiting Maurice G. from living in, or spending the night at, the family residence until the juvenile court determines, following an adequate evidentiary hearing, that Ethan will not be endangered by an order allowing Maurice G. to have unmonitored contact with him.

Woods, J., and Zelon, J., concurred.