Filed 6/26/15  In re S.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E062193 |
| Plaintiff and Respondent, | (Super.Ct.No. J256009-11) |
| v. | OPINION |
| C.M. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant, father.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant, mother.

1

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

I

INTRODUCTION[1]

Three girls with the same mother are the subject of this dependency appeal. N.M., who was born in 2006, is the biological daughter of V.O. So.M., who was born in 2008, is the biological daughter of A.A. Sa.M., born in 2011, is the biological daughter of C.M., father and appellant. Both mother and father challenge the juvenile court's jurisdictional findings under section 300, subdivisions (b) and (j), and the court's orders allowing visitation by the biological fathers with N.M. and So.M. We affirm.

II

FACTUAL AND PROCEDURAL HISTORY

The parents were married in 2010. Father has assumed the paternal role for N.M. and So.M. since 2009. He supports the children and represents himself as their father.

*A. Detention*

In August 2014, CFS[2] filed an original dependency petition, alleging father had inflicted serious physical harm on So.M., and also alleging the parents' failure to protect

---

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

[2] Children and Family Services, San Bernardino County.

and abuse of a sibling. (§ 300, subds. (a), (b), and (j).) Father had used inappropriate discipline on So.M., causing marks and bruises, placing the children at risk of injury or abuse. As eventually amended and sustained by the court, the section 300 petition alleged mother had failed to cooperate with court orders and to protect the children from father, placing them at risk of abuse or neglect. (§ 399, subds. (b) and (j).)

According to the detention report, a child care worker had reported that So.M. had a quarter-sized bruise on her left cheek and red marks on her shoulder, which had been caused when father grabbed her leg and shoulder, threw her on a bed, held her down, and yelled at her. Father was arrested and charged with willful cruelty to a child. (Pen. Code, § 273a, subd. (b).)

Mother claimed So.M. had an active imagination and may have been exaggerating but mother agreed to cooperate with the investigation and protect the child from father. Mother denied any domestic violence by father and she was skeptical of So.M.'s account. N.M. and So.M. told the social worker that when they misbehaved father would impose a timeout. There were no health or safety issues in the home.

CFS recommended the children remain in mother's custody, family maintenance services be provided to mother, and reunification services be provided to father. At the detention hearing, the court ordered the children removed from father's custody and to remain in the custody of mother. Father was granted weekly visitation for two hours.

*B. Jurisdiction and Disposition*

The September 2014 report added the information that the incident with So.M. had occurred when father disciplined the child for refusing to help mother with the laundry. Mother expressed confusion and doubt about what had happened. Father claimed that So.M. had a tantrum and he responded calmly by counting and imposing a timeout. He used physical force to restrain her in her room but he did not throw her or drop her. He thought the bruise had been caused by some accident. He thought So.M.'s version of what happened was based on her perspective. He did not engage in spanking. Father had no criminal history.

So.M. and N.M. were interviewed and gave consistent accounts. Using a toy doll to demonstrate, So.M. described how, when she refused to cooperate, father became angry, picked her up by her legs, threw her on the bed, and twisted her legs. Her face was bruised from contact with the mattress. N.M. said So.M. was "throwing a fit and crying" and father put her on the bed but did not throw her down. Both girls denied any other abuse and asserted the parents do not use physical discipline on the children. They were not scared of father. They were sad not to see him and they were very happy to visit with him.

Father is in the Marines and has served in multiple deployments. Mother has completed one year of a nursing program. There was no prior child welfare or criminal history for the parents. The children were all healthy.

CFS described the incident as inappropriate but an insolated occurrence. CFS recommended father be returned home under supervision and with services for both parents. CFS recommended father be named as the presumed father.

On September 9, 2014, V.O. and A.A., the biological fathers of N.M. and So.M., appeared in court. Mother was uncertain about paternity. A.A. claimed he had supported mother and both children "for a couple of years when they were living in Arizona." V.O. asked for visitation with N.M. Over objections, the court ordered weekly supervised visitation for two hours for the biological fathers.

On October 6, 2014, CFS filed an addendum report. Father had completed an anger management program and was participating in domestic violence and parenting classes. Father attended every class and was described as being motivated and engaged, providing valuable insight to the other attendees. The Marine Incident Determination Committee had investigated the "allegation of child physical abuse" and concluded the incident "did not meet criteria" for child physical abuse.

The social worker had interviewed the biological fathers. V.O. was not at the hospital when N.M. was born. Although he paid support, he did not sign a declaration of paternity. He is not listed on her birth certificate. She never lived with him and she did not know he was her father. He last saw her when she was three years old. After mother married C.M., she resisted any contact with V.O. V.O. spent one year in prison for felony possession of three pounds of marijuana.

A.A. initially believed he was the father of both children and he paid child support for them. He was at the hospital when So.M. was born but he was not in the room and he did not sign a declaration of paternity nor was he listed on the birth certificate. He last saw So.M. about one and one-half years ago when mother visited his sister in Arizona. A.A. is married with a daughter. He and his wife want visits between the children.

Mother refused to bring N.M. for paternity testing because she believed the biological fathers belonged to a Mexican drug cartel and represented a threat. A federal agent confirmed that V.O. has an extensive criminal history and has ties to a Mexican cartel. V.O. was arrested for outstanding warrants. A.A. had only traffic citations.

At the contested jurisdiction and disposition hearing in October 2014, the social worker testified that the daycare workers and law enforcement officers saw the bruise on So.M.'s face but the parents denied noticing the bruise. Neither parent took responsibility for So.M. being hurt. Mother did not fully cooperate with CFS because she tried to conceal the identity of the children's biological fathers and she tried to circumvent the paternity test ordered by the court. At first, mother expressed doubts about whether father hurt So.M. but mother had come to believe it had happened. The social worker believed the children were safe in the home as long as father addressed the issues that posed a risk to the children. During visitation, father demonstrated good parenting skills.

In another addendum report, CFS repeated its recommendation that the children remain in mother's custody with supervision and be returned to father's custody with

6

family maintenance services. Mother was not cooperating with arranging court-ordered visitation with the biological fathers. She accused both of them of making death threats and she said one of the fathers had threatened to take the children. Mother asserted she had obtained a restraining order against A.A. because A.A. had told her he was going to kill mother and take the two girls to Mexico.

The court ordered no visits could occur before the hearing on October 21, 2014. Mother was ordered to cooperate with the social worker because "[she] is not doing that. And that is drawing ire of this Court. If [the social worker] establishes where a visit is going to be, you can't refuse. And you certainly can't say, 'Well, I will have to talk to my lawyer.' . . . And I'm going to get involved if I hear again that you're setting up how things should happen because that's not how things work. That comes from the Court, not you. So that should stop right now. [¶] That kind of manipulation, that kind of – your own dealing with what you think should happen is [subsumed] in what I am going to do."

The jurisdiction and disposition hearing resumed on October 21, 2014. Mother asked the court to recuse itself because it was biased. The court denied the request. Mother testified A.A. had threatened her in the hallway outside the courtroom after the hearing on October 8, 2014. She did not tell any of the sheriff's deputies or the social worker. She called the military police and the sheriff's department that evening and she sent an email to the U.S. Marshall.

Mother said she would not oppose visitation by A.A. but she had obtained the restraining order because of his threats. She denied that she refused to cooperate with paternity testing. She did not object to vacating the restraining order and allowing supervised visitation.

In ruling, the court found the incident with So.M. was an isolated occurrence and father did not present an assessed risk to the family. The court found mother had not cooperated with the court's orders and not protected So.M. because mother did not notice the bruise on So.M.'s face and she doubted what So.M. had said initially. The court ordered the biological fathers to have visits with their respective children but not family services. The court found father to be the presumed father of all three children.

The court dismissed the initial allegations in the section 300 petition. It found mother had failed to cooperate with court orders and to protect her children, and father used inappropriate discipline. The court found all three children came within subdivisions (b) and (j). Father was allowed to return to the home. The children could not be moved from their current residence without approval from the social worker. Both parents were ordered to participate in family maintenance services.

Both biological fathers were allowed to have supervised visits once per week when they were in California. They were also allowed to have appropriate supervised letter and phone contact. A.A. was permitted to include So.M.'s half-siblings in his visits with her.

III

FAILURE TO PROTECT AND ABUSE OF A SIBLING

Both parents challenged the jurisdictional findings under subdivisions (b) and (j) for failure to protect and injury to a sibling. The appellate court applies a substantial evidence standard of review. (*In re J.N.* (2010) 181 Cal.App.4th 1011, 1022; *In re N.M.* (2011) 197 Cal.App.4th 159, 168.)

To find an allegation in a section 300 petition true, the juvenile court must find by a preponderance of the evidence that the child has suffered or is at a substantial risk of suffering serious physical harm or illness as a result of a parent's failure to protect the child. (§ 300, subd. (b); *In re David M.* (2005) 134 Cal.App.4th 822, 827.) The three elements are neglectful conduct, causation, and serious harm or risk. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) There must be a showing at the time of the jurisdiction hearing of a substantial risk of future harm. (*David M.,* at p. 829; *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 672-674; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1395-1396; *Rocco M.,* at p. 823.) Past events are also relevant. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) Subdivision (j) allows for related jurisdiction over a sibling.

We conclude that a preponderance of evidence supported the trial court's finding of harm. It is not disputed that father physically abused So.M., causing a visible bruise and reddening that was reported by childcare workers and not noticed by parents. Furthermore, parents denied the seriousness of what happened and blamed So.M. for

exaggerating. Father's criminal case for willful cruelty to a child is still pending with a pretrial conference on June 29, 2015. (Case No. MMB1400397.) The foregoing established So.M. suffered serious physical harm caused by father, and by mother's failure to protect, and that there existed a substantial risk of future harm. Based on these circumstances, the court properly continued to exercise dependency jurisdiction even though it involved a single incident of physical abuse. (*In re A.E.* (2014) 228 Cal.App.4th 820, 826-827; *In re J.N., supra,* 181 Cal.App.4th at pp. 1025-1026; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1435, fn. 5.)

IV

VISITATION

Visitation orders are reviewed for an abuse of discretion. (*In re John W.* (1996) 41 Cal.App.4th 961, 973-974; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) Parents join in arguing that the court abused its discretion in granting visitation for V.O. and A.A. because it was not in the girls' best interests. (§ 361.5, subd. (f).) Father has been granted presumed father status and V.O. and A.A. have little or no relationship with the girls. V.O. has a significant criminal history.

It is also apparent from the record, however, that mother thwarted the biological fathers' efforts to have relationships with their daughters after her marriage in 2010—including by changing the girls' last names—and throughout the dependency proceedings. Parents have not shown that it would not offer some benefit to the girls or not be in their best interests to know their biological fathers. The court did not abuse its

discretion in ordering limited, supervised visitation. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2006) 145 Cal.App.4th 692, 699, fn. 6; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

V

DISPOSITION

We affirm the juvenile court's jurisdictional findings under section 300, subdivisions (b) and (j), and the court's orders allowing visitation by the biological fathers with N.M. and So.M.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


KING
J.


11