Filed 9/8/20  In re I.J. CA4/2
*See concurring opinion*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re I.J. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E074321 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J280821, J280822, J280823, J280824, J280825 & J280826) |
| v. | |
| S.J., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Landon Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

The juvenile court denied defendant and appellant, S.J. (father), reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(6)[1] (severe sexual abuse) and, thereafter, visitation with the minors. On appeal, father contends insufficient evidence supports the juvenile court's finding of detriment as to minors M.J., A.J., and D.J. (the boys), so as to warrant denying father visitation. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 2019, a social worker responded to an immediate response referral alleging sexual abuse of A.S. (born Aug. 2004) by father. A.S. had disclosed to mother that, for four to five days a week during the previous two years, father had her orally copulate him and would perform oral sex on her. A.S. further disclosed that father would use adult toys on her and penetrated her anus and vagina with his penis. She said father made her give him a "hand job." Police arrested father; father was charged with five counts of sexual offenses.

Father and mother have six children. Mother disclosed continuous acts of domestic violence by father over the course of two years, which included father hitting her with closed fists, pulling her hair, and choking her while the minors were present. Mother said father used methamphetamine, Xanax, and alcohol.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

A social worker interviewed A.S., who disclosed sexual abuse by father for over two years, which included rubbing her breasts, buttocks, and vagina; penetrating her vagina and anus with his penis; mutual oral copulation; and father utilizing a vibrator to penetrate her vagina. She reported father would ask her to come into his bedroom to help him clean, lock the bedroom door, and force her to get naked prior to the incidents of sexual abuse.

A.S. disclosed domestic violence between father and mother, including father punching and choking mother, throwing her against the wall, and dragging her across the room. A.S. reported that father used marijuana, methamphetamine, and Xanax. The social worker also interviewed M.J., A.J., D.J., H.J., and I.J. They reported ongoing acts of domestic violence between mother and father.

On April 30, 2019, personnel from the San Bernardino County Children and Family Services (CFS) filed juvenile dependency petitions alleging father and mother had exposed the minors to domestic violence (b-1), father had a substance abuse problem (b-2), mother had failed to protect the minors from father's substance abuse problems (b-3), father was incarcerated (g-4), and the minors were at risk of sexual abuse (j-5). As to A.S., CFS personnel filed a juvenile dependency petition alleging father and mother had exposed her to domestic violence (b-1), father had a substance abuse problem (b-2), mother had failed to protect her from father's substance abuse problem (b-3), mother had failed to protect her from sexual abuse by father (b-4), father had sexually abused her (b-5), she was suffering serious emotional damage (c-6), she had been sexually abused by father (d-7), and father was incarcerated (g-8). Father failed to appear

3

at the detention hearing despite having been released from jail. The court ordered no contact between father and the minors, finding that any contact would be harmful to their safety and emotional well-being. The court detained the minors and issued temporary restraining orders against father as to the minors.

In the jurisdiction and disposition report filed May 17, 2019, the social worker recommended the court find the allegations true, remove the minors from their parents' custody, provide reunification services to mother, and deny reunification services to father. Father denied any sexual abuse and theorized that A.S. made the allegations up because father was too strict. Father said once weekly he would call A.S. to his room to help him clean for around 20 minutes; he would lock the door because he stored tools, car parts, and sharp objects in the room. Father said A.S. would come into his room on her own. With respect to the domestic violence allegations, father admitted grabbing mother by the hands and calling her profane names in front of the minors. Father also admitted using cocaine during the past year, and he failed to show for an on-demand drug test on May 10, 2019.

A.S reiterated her allegations against father in a forensic interview on May 14, 2019. She said father would ejaculate in her mouth; he would take pictures of her while she was naked; he pointed a camera at them while they were engaged in sex acts; and he made her watch pornography on two occasions. The other minors reiterated their previous allegations of domestic violence.

CFS personnel filed first amended juvenile dependency petitions on May 21, 2019, adding an additional allegation that mother failed to protect A.S. from father's

4

sexual abuse (d-7). The court detained the minors on the amended juvenile dependency petitions.

In an addendum report filed July 11, 2019, phone calls between mother and the minors were ended as father was "'coincidentally'" at mother's apartment during a supervised phone call. Four of the minors indicated they would like to visit with father, but A.S. did not want to visit him. In a forensic interview, A.S. disclosed that father had threatened to beat mother if A.S. refused to engage in sex acts with him.

CFS personnel filed second amended petitions on July 16, 2019, adding allegations that the remaining minors, in addition to the existing allegation with respect to A.S., were at risk of sexual abuse (d-6). As to I.J., the petition alleged mother and father failed to provide necessary dental treatment (b-4 & b-5). In the detention report, the social worker relayed that on July 15, 2019, mother reported that after attending a parenting class, she got on a bus; father followed her onto the bus. During the bus ride, father called her derogatory names and threatened that he would make sure she did not reunify with the minors. He threatened to knock her out and ended up stealing her purse. At the hearing on July 17, 2019, the court reiterated its previous finding of detriment with respect to contact between father and the minors.

In an additional information to the court report filed September 20, 2019, the social worker reported that father had been terminated from his services. Father had failed to enroll in outpatient services and had not drug tested.

At the contested jurisdictional hearing on September 23, 2019, the parties agreed to dismiss the "g" allegations ("father was incarcerated"). Father testified that prior to the allegations made by A.S., he had a good relationship with her. He would call her into his bedroom approximately every other day to help him clean. Sometimes A.S. would come into the room by herself and ask if he needed help. She would sometimes lock the door. Father denied ever touching A.S. in a sexual manner or showing any of the minors pornography.

Father denied hitting mother and was aware mother had obtained a temporary restraining order (TRO) against him. After the issuance of the TRO, father admitted he had "contact" with mother on a bus. Father never admitted to taking mother's purse. However, when asked if he had mother's purse, he replied, "Yes," and "I gave her two purses, and I have a purse." He denied using drugs regularly and said he told the social worker he had used cocaine only when he was younger. Nevertheless, father admitted he had used cocaine in the past year. He did not deny domestic violence between himself and mother.

A.S. testified that father started sexually abusing her when she was in the seventh grade; he continued to abuse her until she told her mother about it. The first time it occurred, she was helping him clean out the car; he told her to "jack him off." A.S. stroked father's penis, as he instructed, until he ejaculated. Another time, he touched her breasts and took pictures of her bare chest. Father would show her and the boys pornography. As they watched, he would say, "'This is how you're supposed to do it.'"

6

Counsel for the boys stated that they wished to visit with father; counsel did not believe visitation would be detrimental to them. The court noted, "I'm not convinced that detriment does not still exist. I think it still exists even though . . . they want to visit." The court sustained the remaining allegations.

At the hearing on November 22, 2019, father's counsel requested supervised visitation with the boys for the purpose of a bonding study. The court denied the request, finding that due to "the dynamic of abuse in the household and the issues that [father] has failed to address . . . , the issue of risk and detriment to the children has not changed." In an additional information to the court report filed December 6, 2019, the social worker noted that on October 20, 2019, father had been referred to outpatient services, including parenting, domestic violence, and anger management classes. Father had tested negatively for drugs on November 14, 2019, but had tested positively for methamphetamine on November 20. Two special incident reports (dated Nov. 6 & 22, 2019) related inappropriate sexualized behavior between I.J. and A.J. However, I.J. admitted the allegation was a joke because he was upset at A.J., and A.J. denied the allegation.

At the contested dispositional hearing on December 9, 2019, father again requested visitation. Counsel for the boys reiterated that they wished to have visitation with father; however, counsel believed father needed to demonstrate progress regarding the "significant problems" that existed before visitation would be appropriate. The court

denied father reunification services pursuant to section 361.5, subdivision (b)(6).[2] The court denied father visitation, finding that it would be harmful to the minors' safety and/or emotional well-being.

## II. DISCUSSION

Father contends insufficient evidence supported the court's finding of detriment to warrant denying him visitation with the boys. We disagree.

The statutory "bypass provisions represent the Legislature's recognition that it may be fruitless to provide reunification services under certain circumstances." (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 597.) When reunification services are not provided to one parent pursuant to a bypass provision but are ordered for the other parent, "[t]he court may continue to permit the parent [not receiving services] to visit the child unless it finds that visitation would be detrimental to the child." (§ 361.5, subd. (f).) "[S]ection 361.5, subdivision (f) provides, in substance, that when the court does not order reunification services under subdivision (b)(2) through (16) or subdivision (e)(1), it 'may,' pending the section 366.26 hearing, 'continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child.'" (*In re Korbin Z.* (2016) 3 Cal.App.5th 511, 518, fn. 5.)

"[V]isitation is not integral to the overall plan when the parent is not participating in the reunification efforts. This reality is reflected in the permissive language of section 361.5, subdivision (f)." (*In re J.N.* (2006) 138 Cal.App.4th 450, 458-459.) Once

---

[2] The court ordered reunification services for mother.

8

the court orders bypass of reunification services at the disposition hearing, it has no obligation to order visitation, particularly if it believes that such visitation would be unsafe for the minors. (*Id.* at p. 457.) We review a juvenile court's discretionary visitation order for abuse of discretion. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2006) 145 Cal.App.4th 692, 699, fn. 6.)

Here, the court was not required to determine there would be detriment to the boys prior to denying father visitation. The court's denial of father's request for visitation was within its discretion. Father had created a sexualized environment within the home, which affected the boys. There was evidence father utilized pornography with the boys as "educational" material. Two of the boys reportedly engaged in sexual behavior together. Father also engaged in domestic violence and used drugs within the home. The court acted within its discretion in denying visitation based upon its determination that the minors' safety and/or emotional well-being would be at risk if it granted visitation.

Assuming, arguendo, that the court was required to render a detriment finding to deny visitation, we note the court did make such a finding, and that finding was within its discretion. Here, the court found true allegations that father had committed severe sexual abuse against A.S., the boys' sibling. That finding was supported by evidence that the abuse consisted of compelled manual stimulation of father by A.S., mutual oral copulation, anal sex, vaginal intercourse, the use of a vibrator on A.S. by father, and other sexual acts. A.S. reported that father threatened to beat mother if A.S. did not comply with the sex acts.

9

Contrary to father's implication, the boys' gender did not mean they were not similarly situated to A.S. (See *In re I.J.* (2013) 56 Cal.4th 766, 778-780 [The serious and prolonged nature of a father's sexual abuse of his daughter supports a finding that the risk of abuse was substantial as to the daughter's siblings, regardless of their gender.].) Moreover, A.S. testified that father showed both her and the boys pornography, instructing them, "'This is how you're supposed to do it.'" A.J. later reportedly pulled down his pants and made I.J. lick his penis. Thus, there was evidence from which the court could find the boys were at risk of sexual abuse. Therefore, at the very least, the court acted within its discretion in determining the boys were at risk of emotional harm from continued visitation with father no matter what restrictions the court placed upon such visitation.

Furthermore, the court found that the detriment to the minors was a result of "the dynamic of abuse in the household." That abuse included not only the sexual molestation of A.S., but also the domestic violence between father and mother, the occurrence of which mother and five of the minors attested.

Finally, father's drug abuse, for which father failed to obtain sufficient treatment, was yet another reason supporting the court's finding of detriment. Father admitted cocaine use, and both mother and A.S. reported he used cocaine, methamphetamine, marijuana, Xanax, and alcohol. Father initially failed to enroll in outpatient services and failed to drug test. He later missed another drug test; he then tested positively for methamphetamine. The court's finding of detriment should visitation continue and, on that basis, order denying father visitation was within its discretion.

10

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER_____
                                                                                                J.

I concur:



RAMIREZ_____
                        P. J.


11

[*In re I.J. et al.*, E074321]

MENETREZ, J., Concurring.

Because father was bypassed for reunification services, he had no right to visitation. (*In re J.N.* (2006) 138 Cal.App.4th 450, 457-459.) Visitation for father was therefore discretionary—a detriment finding was not required. I concur in the judgment because the trial court did not abuse its discretion by ordering no visitation, given father's appalling conduct and the serious harm he has already inflicted on his children.

MENETREZ
                                                                                    J.

1