Filed 9/19/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re KORBIN Z., a Person Coming Under the Juvenile Court Law. | B269429 (Los Angeles County Super. Ct. No. DK03434) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MICHAEL W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Miller, Commissioner. Affirmed in part, reversed in part, and remanded.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Linda B. Puertas, under appointment by the Court of Appeal, for minor.

Michael W. (Father) appeals from an order of the juvenile court on his petition under Welfare and Institutions Code section 388[1] giving his minor son, Korbin Z. (Korbin), sole discretion whether Father will have visits with him. Korbin (the sole respondent on appeal)[2] contends that Father had no right to visitation under the circumstances of this case, and that therefore it was not improper to delegate to Korbin the decision whether he will visit with Father.

As we explain below, we conclude that where, as here, the court has not ordered reunification services because, under section 361.5, subdivisions (b)(1) and (d), the parent's whereabouts were unknown for more than six months after the child's out-of home placement, the parent has no right to visitation. Nonetheless, the court may order visitation in the exercise of its discretion under section 362, subdivision (a), on a finding that such visitation will serve and protect the child's best interests. But, as is the rule when visitation is ordered as part of a reunification plan, the court cannot give the child sole discretion to determine whether such visitation will occur. Rather, once the court determines that visitation is in the child's best interests, the court must, as part of its duty to protect and serve those interests, ensure that such visitation occurs under terms set by the court. Otherwise, by placing sole discretion whether visitation will occur in the hands of the child, the court will have ceded to the child the determination whether visitation is in the child's best interests. Therefore, we reverse the order regarding Father's visitation, and remand for the court to reconsider whether to order visitation, and if so, to set the terms of that visitation.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

[2] The Los Angeles Department of Children and Family Services takes no position in this appeal and therefore did not file a brief.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, Korbin (born Oct. 2004) lived with his mother, K.T. (Mother), his half-sister (born Jan. 2010), and Mother's male companion, Rene A.[3] On December 4, 2013, the Los Angeles County Department of Children and Family Services (DCFS or agency) filed a section 300 petition on behalf of Korbin and his half-sister, asserting jurisdiction under section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect). Father's whereabouts were unknown.

The section 300 petition alleged that Mother and Rene engaged in a violent confrontation in the children's presence; Mother and maternal grandmother engaged in a violent confrontation in the children's presence; Mother had mental and emotional problems and failed to take her psychotropic medication; and Mother was a current abuser of marijuana and alcohol.

Mother and Korbin had not had contact with Father since Korbin was three weeks old. According to Mother, Father had made no efforts to contact her or Korbin since then. Mother told the caseworker that she had obtained a temporary restraining order against Father because of domestic violence.

Father was not present at the December 4, 2013 detention hearing. He was deemed to be Korbin's presumed father and was granted reunification services and, if he contacted DCFS, monitored visits. The juvenile court found a prima facie case was established for detaining Korbin and ordered him detained with his maternal aunt.

In February 2014, DCFS filed a declaration of due diligence, indicating that the agency had searched numerous sources, including prison, military, voter

---

[3] Half-sister and Mother are not parties to this appeal.

3

registration, Department of Motor Vehicles, and Lexis/Nexis records, and found seven addresses for Father. (See § 361.5, subd. (b)(1) [a finding that a parent is whereabouts unknown shall be supported by an affidavit showing "a reasonably diligent search" was performed].) The agency mailed certified notices to all seven addresses.

At the February 19, 2014 jurisdiction/disposition hearing, the juvenile court found that due diligence as to Father's whereabouts had been completed. The court found that Father was Korbin's legal father and vacated the prior finding of presumed father status. The court declared Korbin a dependent of the court under section 300, subdivision (b), based on the allegation that Mother's mental and emotional problems rendered her unable to care for the children. The court dismissed the other allegations in the interest of justice. The court did not order reunification services for Father but ordered monitored visits once he contacted the court or DCFS.[4]

At the six-month review hearing in August 2014, the court found that Mother was not in compliance with her case plan. At the 12-month review hearing in February 2015, the court terminated reunification services for Mother and scheduled a section 366.26 hearing for permanent placement. (See § 366.21, subd. (g)(4) [if court does not return child to parent at 12-month hearing, court may order section 366.26 hearing].)

In July 2015, DCFS mailed notice to Father about the section 366.26 hearing on selection of a permanent plan for Korbin. Father contacted DCFS and said that he had been trying to contact the agency for a month. He had not seen Korbin for

---

[4] Father was not entitled to reunification services under section 361.5, subdivision (b)(1), which states that services need not be provided if the court finds that the parent's whereabouts are unknown.

nine years, but he expressed willingness to have Korbin placed with him. The section 366.26 report stated that Korbin missed Mother and wanted to live with her, but he did not wish to have visits with Father.

Father appeared at the August 2015 section 366.26 hearing. The court continued the hearing and denied Father's request for DNA testing.

Father filed a section 388 petition in October 2015, asking the court to set aside its February 2014 finding that DCFS issued proper notice to him and to order that Korbin be released to his custody. He argued that DCFS should have found his address because he had "maintained a current address with child support." He further argued that the requested order would be better for Korbin because it would provide him with "the love and stability a child deserves."

The court held a hearing on October 28, 2015, and denied Father's section 388 petition. The court found that the agency exercised due diligence, noting that Father's address on his driver's license still was not correct at the time of the section 388 hearing. The court further concluded that Father had not met his burden of showing that changing the prior order would be in Korbin's best interests, citing the following reasons: Korbin's desire to remain with his maternal aunt and uncle, whom he considered to be his family; Father's lack of a relationship with Korbin, due in part to the restraining order against him for three years; and Korbin's age. (See *In re A.A.* (2012) 203 Cal.App.4th 597, 611 [under section 388, the parent has the burden of establishing "by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child"].)

The court concluded that changing the prior order would be too disruptive for Korbin but expressed the opinion that as Korbin matured, he might want a relationship with Father. Mother objected to any visits, stating that Father had

5

burned her other child with cigarettes and beaten her while she was pregnant. Counsel for Korbin also stated that Korbin did not want any visits with Father. The court expressed the desire to allow monitored visits in the future in case Korbin changed his mind but explained that the decision to have any visits would be Korbin's. The court thus ordered DCFS to facilitate monitored visits with Korbin and Father in a therapeutic setting at Korbin's discretion. The court found that the permanent plan of legal guardianship was appropriate and continued the section 366.26 hearing. Father appealed.

## DISCUSSION

Father contends that the juvenile court erred in giving Korbin sole discretion over Father's visitation. We agree. Although the court was not required to order visits for Father, once it did so, it could not delegate the decision whether visitation would occur to Korbin. Rather, the court had the continuing obligation to supervise any such visitation and determine the terms under which visitation would occur. We therefore reverse the visitation order and remand for the court to reconsider whether to order visitation, and if so, the terms of the visitation.

Case law consistently holds that the juvenile court cannot delegate the decision whether visitation will occur to any third party, including the child, the social services agency, or the guardian. (See, e.g., *In re Ethan J.* (2015) 236 Cal.App.4th 654, 656 (*Ethan J.*) [juvenile court may not terminate dependency jurisdiction knowing that child refused to participate in visitation]; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 (*T.H.*) ["The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. [Citation.]"]; *In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136 [juvenile court

6

improperly delegated authority to department of health and human services regarding whether visitation would occur]; *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1505 (*Hunter S.*) [juvenile court erred in failing to enforce visitation order where child refused any contact with his mother]; *In re S.H.* (2003) 111 Cal.App.4th 310, 319 ["In no event . . . may the child's wishes be the *sole* factor in determining whether any visitation takes place . . . ."]; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48-49 [juvenile court abused its discretion in giving children "absolute discretion" to decide whether mother could visit them because this order "essentially delegated judicial power to the children"].) "A visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner. [Citation.] That said, 'the ultimate supervision and control over this discretion must remain with the court . . . .' [Citation.]" (*T.H.*, *supra*, 190 Cal.App.4th at p. 1123.) The juvenile court "improperly delegate[s] its authority and violate[s] the separation of powers doctrine" if it "delegates the discretion to determine whether any visitation will occur" to a third party. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1009.)

Korbin notes that these decisions limiting a juvenile court's authority to delegate visitation arise under circumstances where the parent has the right to visit the child as part of a reunification plan. Here, however, Father had no right to visitation. Therefore, Korbin argues, these decisions do not apply to Father's case.

It is true that Father had no right to visitation. At the February 2014 hearing, the court found that DCFS had established due diligence as to Father. Once that finding was made, Father was not entitled to reunification services, and the court ordered that he be offered no reunification services. (See § 361.5, subd. (b) ["Reunification services need not be provided to a parent or guardian . . . when the court finds, by clear and convincing evidence . . . [¶] . . . [t]hat the whereabouts of

the parent or guardian is unknown. . . ."].) Although "[v]isitation is an essential part of a reunification plan," it "is not integral to the overall plan when the parent is not participating in the reunification efforts." (*In re J.N.* (2006) 138 Cal.App.4th 450, 458-459 (*J.N.*); see also *In re D.B.* (2013) 217 Cal.App.4th 1080, 1090 [the court's discretion over visitation is less constrained after reunification services are terminated, when the focus is "on permanency and stability for the child"].)

Had Father's whereabouts become known within six months of Korbin's out-of-home placement, Father would have been entitled to reunification services. (See § 361.5, subd. (d) ["If reunification services are not ordered pursuant to paragraph (1) of subdivision (b) and the whereabouts of a parent become known within six months of the out-of-home placement of the child, the court shall order the social worker to provide family reunification services in accordance with this subdivision."].) But Father's whereabouts did not become known until he appeared in court in August 2015, 20 months after Korbin was removed from Mother's custody in December 2013.

Thus, because section 361.5, subdivision (d) did not apply, Father was not entitled to reunification services. And because he was not entitled to reunification services, he had no right to visitation. Nonetheless, no statute precluded the court from ordering visitation even though, under section 361.5, subdivision (b)(1), the court did not order reunification services.[5] Further, section 362, subdivision (a)

---

[5] We note that section 361.5, subdivision (f) provides, in substance, that when the court does not order reunification services under subdivisions (b)(2) through (b)(16) or subdivision (e)(1), it "may," pending the section 366.26 hearing, "continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child." (§ 361.5, subd. (f).) These listed subdivisions concern circumstances where no reunification services are ordered for reasons such as mental disability, death of another child, sexual abuse, severe physical harm, and conviction of a violent felony. They do not include the situation here, where no reunification services were ordered under

provides: "If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court." This provision grants "'broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.]'" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532; see also § 362, subd. (d) ["The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section . . . ."].) Given this broad discretion, upon a finding that visitation would serve and protect Korbin's interests, we conclude that the court had the authority to order visitation.

But we also conclude that, having made the decision to order visitation, the court had the obligation to supervise that visitation, and could not delegate to Korbin the authority to determine whether such visitation would occur at all. Rather, the standard rule precluding the delegation of sole authority over visitation to the minor applies: "If the juvenile court orders visitation, 'it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur.' [Citation.] When the court abdicates its discretion and permits a third party, including the dependent child, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion. [Citation.]" (*Ethan J.*, *supra*, 236 Cal.App.4th at p. 661; see *In re*

---

subdivision (b)(1) of section 361.5, because Father's whereabouts were unknown. Nonetheless, while section 361.5, subdivision (f) does not specifically authorize the court to order visitation when no reunification services are ordered under subdivision (b)(1), it also does not preclude such an order.

*Nicholas B*. (2001) 88 Cal.App.4th 1126, 1138 ["[V]isitation may not be dictated solely by the child involved although the child's desires may be a dominant factor"]; *Hunter S*., *supra*, 142 Cal.App.4th at p. 1505 ["In no case may a child be allowed to control whether visitation occurs."].)

Any other rule would cede to Korbin the court's duty under section 362, subdivision (a) to determine what is in Korbin's best interests. In other words, under the circumstances present here, where under section 361.5, subdivisions (b)(1) and (d) reunification services have not been ordered, the court may order parental visitation in the exercise of its discretion under section 362, subdivision (a), on a finding that such visitation will serve and protect the minor's interests. But the court must set the parameters of such visitation. It cannot place in the minor's hands the sole discretion to determine whether such visitation, which the court has determined is in the child's best interests, will occur at all.

Thus, we conclude that the court improperly delegated authority to Korbin to decide whether visits with Father would occur. We reverse that portion of the October 2015 order regarding Father's visitation and remand for further proceedings. On remand, in light of Korbin's opposition to visits with Father, the court may reconsider whether the visits are in Korbin's best interests. (See *Hunter S., supra,* 142 Cal.App.4th at p. 1508 ["In conducting a new section 388 hearing, given the passage of time and the consistent intensity of Hunter's resistance, it may be appropriate for the juvenile court to further consider if, under the circumstances and in light of current information, visits would be detrimental to Hunter"]; *J.N., supra,* 138 Cal.App.4th at p. 459 [no abuse of discretion in court's finding that contact with the mother would not be in the child's best interest where the mother had "not seen him for nine years," and it was reasonable to infer there was not a strong relationship between them].) If the court nonetheless orders visitation, it

10

must set the terms of such visitation, mindful of the rule that "[a] visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner. [Citation.] That said, 'the ultimate supervision and control over this discretion must remain with the court . . . .' [Citation.]" (*T.H.*, *supra*, 190 Cal.App.4th at p. 1123.)

## DISPOSITION

The portion of the October 28, 2015 order regarding Father's visitation is reversed. The matter is remanded for the juvenile court to reconsider whether to order visitation, and if so, the terms of such visitation. In all other respects the order is affirmed.

## CERTIFIED FOR PUBLICATION


WILLHITE, Acting P. J.


We concur:


MANELLA, J.


COLLINS, J.

11