Filed 12/5/22 In re D.P. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re D.P. et al, Persons Coming Under the Juvenile Court Law. | B315051 |
| | (Los Angeles County Super. Ct. No. 19LJJP00581A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOHNEISHA C., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Susan Ser, Judge. Conditionally affirmed and remanded.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Johneisha C., the mother of eight-year-old D.P. and five-year-old S.P., appeals the orders made at the July 23, 2021 selection and implementation hearing (Welf. & Inst. Code, § 366.26)[1] appointing a legal guardian for the children, granting Johneisha monitored visitation at the discretion of the guardian and terminating dependency jurisdiction. Johneisha contends the juvenile court erred in delegating complete discretion to the guardian to determine whether any visitation would occur. She also contends the Los Angeles County Department of Children and Family Services failed to fulfill its statutory duties of inquiry and notice under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law and the juvenile court failed to ensure the Department had complied with those duties before concluding ICWA did not apply to these proceedings.

In its respondent's brief the Department agrees a remand is appropriate for the juvenile court to specify the frequency and duration of visits between Johneisha and the children and to ensure compliance with the inquiry and notice provisions of ICWA. However, the Department suggests we conditionally affirm the findings and orders granting legal guardianship and terminating jurisdiction, rather than remanding for a new permanency hearing as initially requested by Johneisha.

---

[1]    Statutory references are to this code unless otherwise stated.

2

In a letter in lieu of a reply brief Johneisha agrees with the Department's recommendation, as do we. Accordingly, we conditionally affirm the court's July 23, 2021 findings and orders except as to visitation and the applicability of ICWA and remand with directions to enter a new order specifying the frequency and duration of visitation and to ensure full compliance with the inquiry and notice provisions of ICWA and California law.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Dependency Proceedings*

The juvenile court on October 15, 2019 sustained the Department's amended petition pursuant to section 300, subdivision (b)(1), based on the ongoing substance abuse of Johneisha and Thomas P., S.P.'s father. The children were declared dependents of the court in December 2019 and removed from the custody of their parents. The court ordered family reunification services for Johneisha and Thomas, but denied them to Samuel P., D.P.'s father, who was incarcerated for a lengthy prison term. Johneisha's case plan included a full drug/alcohol program with testing and aftercare and parenting education. She was granted monitored visitation. The court did not specify the frequency or duration of the visits.

The children were placed in the home of Jacqueline P., a nonrelated extended family member, in November 2019, where they remained placed following the December 2019 disposition hearing.

At the continued six-month review hearing (§ 366.21, subd. (e)), finally held in March 2021, the court found Johneisha was in partial compliance with her case plan: She had completed a 12-week parenting course, but dropped out of her drug treatment program and failed to submit to drug testing. Thomas

3

was not in compliance. The court terminated reunification services for both parents and scheduled a selection and implementation hearing (§ 366.26) for July 6, 2021.

Johneisha filed a section 388 petition on July 6, 2021, asking the court to return D.P. and S.P. to her custody or, in the alternative, to reinstate reunification services and to liberalize her visits to unmonitored and overnight. The court ordered a hearing on the section 388 petition for July 23, 2021 and continued the section 366.26 hearing to that date.

At the combined hearing on July 23, 2021 the court denied the section 388 petition, finding Johneisha had not shown changed circumstances and the requested modifications would not be in the children's best interests. As the children's permanent plan, the court appointed Jacqueline P. their legal guardian. (Jacqueline P. had indicated she was interested in adoption, but opted for legal guardianship to allow the parents to regain custody in the future.) The court ordered monitored visitation for Johneisha "at the discretion of the legal guardian." Over the objection of Johneisha, who contended Jacqueline P. was thwarting her visitation, the court terminated its jurisdiction.

Johneisha filed a timely notice of appeal.

2. *The Department's ICWA Inquiry*

At the detention hearing on August 16, 2019 Johneisha submitted an ICWA-020 form stating she may have Indian ancestry (tribe unknown) through the maternal grandmother, Luella B., and provided a telephone number. Although ordering the Department to investigate Johneisha's possible Indian ancestry, the court did not question Johneisha regarding her ancestry at the hearing.

4

On his ICWA-020 form, also submitted on August 16, 2019, Thomas P. stated, to his knowledge, he had no Indian ancestry. The court did not question Thomas P. regarding his possible Indian ancestry at the detention hearing.

Samuel P.'s first appearance was in October 2019. His ICWA-020 form stated he may have Indian ancestry through the Blackfoot tribe and indicated his mother may have additional information. The court ordered the Department to investigate, but, as with the other two parents, made no inquiry of Samuel P., who was present in the courtroom.

A social worker contacted Luella B., who confirmed Cherokee and Blackfeet ancestry and provided names and other information about family members. Luella B. said she was not registered with a tribe. The social worker also spoke to Johneisha, who said she was not registered with a tribe and, to her knowledge, neither Thomas P. nor Samuel P. had Indian ancestry.

There is no indication in the record that any further inquiry was made of additional maternal relatives or any of Thomas P.'s or Samuel P.'s family members, including Samuel P.'s mother, with whom the children had initially been placed.

In a last minute information report for the court, filed October 15, 2019, the Department stated it had mailed notices to the Blackfeet tribe, three Cherokee tribes, the Secretary of the Interior and the Bureau of Indian Affairs. Unsigned copies of the certified mail receipts addressed to the parents were attached to the report, but not copies of the ICWA forms or the mail receipts addressed to the tribes. In a report dated December 19, 2019 the Department described and attached letters from the Eastern

5

Band of Cherokee Indians and the Blackfeet Nation stating Johneisha and the children were not registered or eligible to register with the tribe.  Again, no copies of the letters sent to the tribes were submitted with the report.  At the disposition hearing on December 19, 2019 the court found ICWA did not apply to the case.

## DISCUSSION

1. *The Juvenile Court Erred in Failing To Make a Specific Visitation Order*

When the juvenile court at the selection and implementation hearing orders a legal guardianship for a child, it must "'make an order for visitation with the parents . . . unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child.'"  (§ 366.26, subd. (c)(4)(C); accord, *In re Ethan J.* (2015) 236 Cal.App.4th 654, 661.)  And if the court orders visitation, "'it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur.'"  (*In re Ethan J.*, at p. 661; accord, *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 516 ["the juvenile court cannot delegate the decision whether visitation will occur to any third party, including the child, the social services agency, or the guardian"]; see *In re S.H.* (2003) 111 Cal.App.4th 310, 313.)

As Johneisha argues (and the Department concedes), under this well-established statutory and case authority, the juvenile court erred in delegating to Jacqueline P., the children's legal guardian, the power to determine whether any visitation would occur.  Although we conditionally affirm the order granting the legal guardianship, we reverse the visitation order and remand for the juvenile court to issue a new order specifying the

6

frequency and duration of visits between Johneisha and the children. (See *In re M.R.* (2005) 132 Cal.App.4th 269, 271 [visitation order reversed and remanded where juvenile court improperly delegated to legal guardian the power to decide whether visits would occur]; *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1164, 1167, 1170-1171 [order of guardianship affirmed but visitation order reversed and remanded where juvenile court delegated its discretion to determine whether any visitation would occur to the guardian]; see also *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1312 [visitation order reversed and remanded for juvenile court to specify the frequency and duration of visits].)

    2. *Remand Is Necessary for Compliance with ICWA Inquiry and Notice Requirements*

To ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related state law (see *In re Isaiah W.* (2016) 1 Cal.5th 1, 5), an investigation of a child's possible Indian ancestry must be undertaken and, where appropriate, notice provided to interested tribes. (See § 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"].) The duty to inquire "begins with the initial contact" (§ 224.2, subd. (a)) and obligates the juvenile court and child protective services agencies to ask all relevant involved individuals whether the child may be an Indian child. (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; § 224.2, subds. (a)-(c).)

In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding a child's possible Indian status "[i]f the court, social worker, or probation officer has reason to believe

7

that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (See also Cal. Rules of Court, rule 5.481(a)(4) [further inquiry must be conducted if the social worker "knows or has reason to know or believe that an Indian child is or may be involved"].)

If those inquiries result in reason to know the child is an Indian child, notice to the relevant tribes is required. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3.) The governing federal regulations require ICWA notices to include, if known, the names, birthdates, birthplaces and tribal enrollment information of all direct lineal ancestors of the child. (25 C.F.R. § 23.111(d)(3) (2022).) State law mandates inclusion of "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C).)

As reflected in the record and acknowledged by the Department on appeal, after Thomas P. stated he had no Indian ancestry as far as he knew, the Department did not interview any of his known extended family members about ICWA's possible application to the case, a violation of section 224.2, subdivision (b), which expressly states the duty to inquire includes, but is not limited to, asking extended family members whether the child may be an Indian child. Similarly, although a social worker spoke to Luella B., Johneisha's mother, the Department did not conduct further interviews concerning the

8

children's possible Indian ancestry with other maternal family members or with members of Samuel P.'s family. This, too, was error. Finally, again as conceded by the Department, the record does not include the ICWA-030 forms sent to the Indian tribes or indicate what information was included on those forms. Yet another error.

Based on the record, the Department has asked this court to remand the matter for compliance with the ICWA inquiry and notice requirements as set forth in both federal and state law. Johneisha agrees with this request, as do we.

## DISPOSITION

The juvenile court's findings and orders granting a legal guardianship for D.P. and S.P. and terminating dependency jurisdiction are conditionally affirmed. The visitation order is vacated and the cause remanded for the juvenile court to issue a new order specifying the frequency and duration of visits between Johneisha and the children, for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

9