Filed 3/12/24  In re Javon H. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JAVON H. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. D.O., Defendant and Appellant. | A167362 (Alameda County Super. Ct. Nos. JD-032141-01, JD-032142-01) |

D.O. (Father) appeals orders made at the conclusion of an 18-month dependency review concerning his twin stepsons, Javon and Jaden (collectively, Minors). (See Welf. & Inst. Code, § 366.22; all unenumerated statutory references are to this code.) At the conclusion of the August 2022 review hearing, the juvenile court found that respondent Alameda County Social Services Agency (Agency) had provided Father and the Minors' mother (Mother) with reasonable services. The court terminated services to both parents, continued the Minors in their out-of-home placement, and established legal guardianship as their permanent plan. Father contends the juvenile court prejudicially deprived him of procedural due process at the

1

review hearing when it reacted to his repeated failures to appear by
" 'default[ing]' " him, or prohibiting him from providing testimony. Father
also contends that no substantial evidence supports the court's reasonable
services finding, as he was improperly denied any form of visitation or
contact with the Minors after the spring of 2021. Because we agree with
Father's second contention, we reverse and remand for further proceedings.

## BACKGROUND

Father and Mother have six children, but these two Minors have a
different biological father, and their two older siblings have a different
biological mother. This appeal pertains exclusively to the Minors, Father's
stepchildren. Father and Mother both have a significant history of substance
abuse and, prior to February 2020, were receiving from the Agency informal
family maintenance services. Then, on February 11, 2020, school officials
discovered three used needles and an empty methadone container in then
seven-year-old Jaden's backpack and learned that Javon had been pricked by
one of the needles. The Agency took both Minors and their four siblings into
protective custody and placed them in foster homes. Weekly supervised visits
for the entire family soon began.

On February 14, 2020, the Agency filed a juvenile dependency petition
against Father and Mother with respect to the Minors and their two younger
siblings. On April 21 the Agency filed the operative second amended petition,
whose pertinent allegations include Father's and Mother's failure to
supervise the Minors as a result of substance abuse. (See § 300, subd. (b)(1).)
The Agency recommended that the court not order reunification services for
Father with regard to the Minors until he was established as their presumed
father.

2

On May 29, the juvenile court sustained jurisdiction as to both Minors, declared them dependents, and awarded Mother reunification services. According to an Agency report, the court continued the matter of paternity due to unresolved issues. The appellate record for the Minors contains a June 5 minute order that does not resolve their paternity issues, but does direct the Agency to arrange for visitation between the "parents" and Minors "as frequently as possible consistent with the child(ren)'s well being." According to a later Agency report, at the June 5 hearing, Father was also ordered to "cooperate" with a case plan proposed by the Agency that included parenting education, an outpatient substance abuse program, and drug testing. The Agency also reported that on June 12, Father was declared the presumed father and awarded reunification services as to the Minors' two younger siblings, although that order is not in the appellate record.

On November 16, 2020, the juvenile court held a six-month review hearing. In a Status Review Report prepared for the hearing, the Agency relayed that the Minors had reported past physical abuse by Father, "including being hit and punched all over, and being called demeaning names so that they are afraid of [Father]. Jaden also reportedly has fear [of] being in the bathroom by himself as that is where the reported abuse happened." Jaden was receiving therapy for post-traumatic stress disorder (PTSD) and attention deficit hyperactivity disorder (ADHD), his caregiver reported. Both Minors were, at the time of the review hearing, engaged in weekly supervised visits with Father, Mother, and their siblings. At the conclusion of the review hearing, the juvenile court found reasonable services had been offered or provided, maintained the Minors as dependents, and continued reunification services.

Also at the conclusion of the six-month review hearing, the court ordered that visitation continue with both parents "as frequently as possible, consistent with the child(ren)'s well-being." For three months thereafter, the entire family engaged in weekly supervised visits and weekly video visits. The supervisor reported the visits went well, but by mid-February 2021 there were reports "about escalating behaviors when Jaden was returning from visitation" and reports that both Minors "expressed anxiety around coming to the visitation." In one February visit, Father made a comment to Jaden that he missed beating him up, which Father dismissed as a joke. On February 16, a decision was made that the Minors would "temporarily not be coming" to the in-person family visits, and that the Agency would arrange separate visits for them to have with Mother and their siblings.

On April 6, 2021, the juvenile court held a twelve-month review hearing. In the Status Review Report prepared in anticipation of this hearing, the Agency recommended continuing the Minors' dependency status and providing parents with additional services. Father had successfully completed his parenting education class in January, but the Agency recommended "Therapeutic Visitation/family therapy" to address ongoing concern that Father had not acknowledged how his previous drug use had affected his parenting, and additional concerns that arose post-dependency regarding Father's behavior during visits, relationship with his children, and the Minors' fears or concerns about returning to his care. Although initially open to therapeutic visits, Father changed his mind, stating that he did not want to participate or for his family to "be 'lab rats.' " The report also detailed Father's uneven progress with substance abuse programming. As a result of a confrontation with staff, he had been terminated before the six-month review from the program at Options Recovery Services, and after a

contentious relationship with an instructor at Terra Firma and positive tests for THC and methadone, he left this second program before the 12-month review, beginning a third program called Second Chance. The status report also brought to the court's attention the difficulty around visitation that had prompted the Agency to end visits between Father and the Minors in February 2021, although the Agency continued to recommend that both parents have visitation with the Minors "as frequently as possible consistent with the child(ren)'s well-being."

At the April 6, 2021, hearing, the juvenile court conducted a paternity inquiry as to the Minors, and "elevated" Father to the status of presumed father. Then the court made findings to continue the Minors' dependency and out-of-home placement, and also found that the Agency had offered or provided reasonable services. According to the minute order, it then ordered that visitation for both parents continue "as frequently as possible consistent with the child(ren)'s well-being."

When the juvenile court next addressed visitation, on June 29, 2021, the court ordered that all visits between the Minors *and Mother* be therapeutic visits, without mentioning Father at all. It appears Father had no visits with the Minors, therapeutic or otherwise, after February 2021.[1]

The 18-month review hearing occurred over 10 court days between March and August 2022. The Agency's 18-month review report dated September 9, 2021 recommended that the juvenile court terminate both

---

[1] We find no mention of any visits for Father after mid-February 2021 in the social services reports prepared for the 12- and 18-month review hearings, and the parties have pointed us to no evidence of any such visits. During a July 2022 session of the contested 18-month review, the case worker rather tentatively agreed with counsel's characterization that Father's visits with the Minors "came to somewhat of an abrupt end during about June of 2021."

parents' reunification services, continue the Minors in foster care, and pursue a permanency plan with the goal of legal guardianship. As regards Father, the report stated he had not completed any of the three substance abuse programs; he continued to test positive for THC and methadone; and he did not understand how his substance abuse affected his parenting. The visitation section of the report mentioned no visits between Father and the Minors during the review period and gave no explanation for this silence, but elsewhere the report stated (apparently falsely) that the juvenile court had "denied visits" between Father and the Minors on April 6, 2021. The Agency also reported that the Minors "continue to express concern regarding the possibility of interacting with [Father] given the reported past trauma allegations." Of concern, the Agency also reported the Minors "continue[d] to experience a disruption in placement," leading to "heighten[ed] negative behaviors and instability in presenting mental health symptoms."

In a March 1, 2022 addendum report, the Agency reported that in January 2022, both Minors told the Agency they wanted to return home, and that they were no longer afraid of Father. The Minors' therapist disputed that the boys were no longer afraid, but both Minors told the Agency they wanted to have visits with Father. Father also wanted visits with them, but the Agency reported (again erroneously) that the juvenile court had "denied visits between" the Minors and Father on April 6, 2021. We see nothing in the record to substantiate that the court had taken this step and, in particular, no finding from the April 6, 2021 hearing that continued visitation would be detrimental to the Minors. On the contrary, although the Agency had reported to the court its serious concerns about Father's past abuse and the Minors' fear of him, the minute order from the 12-month review hearing

6

that was held on April 6 records that the court ordered visitation for both parents "as frequently as possible consistent with the child(ren)'s well-being."

Mother and Father both attended the first installment of the 18-month review hearing, held on March 2, 2022. Mother began but did not finish testifying, so the matter was continued until March 23. Neither parent appeared on March 23 and the judge was also unavailable, so the matter was continued. This occurred, with the same result, several times.

At one of these subsequent hearings, on May 11, 2022, Father's counsel conveyed Father's desire to renew visitation with both Minors. Opposing the request, Minors' counsel informed the court that the therapeutic team had not green-lighted visits with Father because the Minors' individual therapist "continues to say that it would be dysregulating for the boys." Counsel recalled that in April 2021 the juvenile court had backed away from making a finding that visits with Father would be detrimental to the Minors, and instead had given "the Agency discretion to begin therapeutic visitation if it was indicated by the therapeutic team." Standing in for her still absent colleague, the judge presiding at the May 11 hearing granted discretion to the Agency for therapeutic visits between the Minors and Father, on three days' notice to Minors' counsel, even as she observed based on her review of the record that the Agency was unlikely to exercise that discretion to allow visits at that time.

Again at the seventh court day of the contested 18-month review hearing, July 7, neither Father nor Mother appeared. The parents had attended none of the sessions of the 18-month review hearing since the first one, on March 2, 2022, in spite of being properly noticed for multiple dates and ordered to appear at the July 6 session. On July 7, Minors' counsel informed the court that the Minors had "lost their placement" due to the

7

repeated continuances, and counsel requested that the court strike Mother's incomplete testimony and proceed in the parents' absence. The court denied the motion to strike but announced that Mother and Father had "defaulted their opportunity to present further evidence on their own behalf as witnesses, by not being here." Thus, they would "not be allowed to take the stand."

Neither parent appeared at the remaining sessions of the contested hearing. As a result, they missed hearing Agency workers testify along the lines of the Agency's 18-month review report and addendum. In a July 19, 2022 memorandum report, the Agency renewed its recommendation to terminate reunification services and adopt a permanent plan of legal guardianship for the Minors. In its status update, the Agency reported that Father had not responded to attempts by the Agency to communicate with him, but he had completed anger management and was "almost done" with his substance abuse treatment program. Service providers reported a positive change in his attitude, and he was consistently drug-testing. However, the Minors expressed fear about Father, and the Agency was concerned about Father's refusal to acknowledge prior abuse. The Agency also repeated its false statement that the juvenile court had denied Father visitation in April 2021.

Due to their nonappearance, the parents were not present when, at the final session of the review hearing, the juvenile court announced its findings and conclusions. The court found the Agency had offered or provided "[r]easonable services" and made "reasonable efforts" to return the Minors to their parents, that the parents had partially complied with their case plans, and that there would be "a substantial risk of detriment" in returning the Minors to parental custody. The court terminated reunification services to

both parents, but preserved the status quo on visitation. Therapeutic visitation for Mother was ongoing and, as to Father, "the Agency retains discretion to initiate therapeutic visitation for [Father] and the children." The court declined to set a section 366.26 hearing, as the Minors were not proper subjects for adoption; it instead established legal guardianship as the Minors' permanent plan.

Father timely appealed.

## DISCUSSION

Father raises a procedural challenge and a substantive challenge to the juvenile court's orders.

## I.

Father first protests that the court's "default" ruling violated his right to procedural due process. Father points out, "[j]uvenile courts may not deprive a parent of her or his procedural due process rights simply because the parent failed to appear." (*In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1130 (*Vanessa M.*).) "Where, as here, credibility is at stake, parents are entitled to present oral testimony as well as to confront and cross-examine the witnesses against them." (*Ibid.*) Had Father appeared at the seventh session of the hearing—or the eighth, ninth, or tenth—it would have been error under the rule of *Vanessa M.* to exclude him from testifying as a sanction for earlier failures to appear. However, Father did not appear at any session of the 18-month review hearing after the first, which distinguishes this case from the facts of *Vanessa M.*, where the parent who was barred from testifying had "appeared at the hearing on time and prepared" to take the stand. (*Id.* at p. 1127.)

Here, Father's "unjustified failure to appear at a duly noticed hearing reflects [his] choice not to attend. [Citation.] A court may properly treat this

9

choice as a waiver of the right to be present *at that hearing* and of the benefits of being present." (*Vanessa M.*, *supra*, 138 Cal.App.4th at p. 1132.) One benefit Father waived by failing to appear was the right to testify on his own behalf at the sessions he missed. As the juvenile court explained, on the tenth and final day of the hearing: Father "voluntarily opted out of any . . . witness possibility." "I wish he had come and taken the stand, and taken the chance to explain his side of the story, but he didn't." We acknowledge that the broad language the trial court used at the hearing on July 7 is troubling, but the dispositive facts are that Father was not present that day and did not subsequently appear to test how broadly the court would apply its ruling. Under the circumstances, we conclude that Father waived his right to testify by never appearing in court to assert it. He was not deprived of the right to due process.

## II.

Father's second challenge is to the sufficiency of the evidence supporting the juvenile court's finding that the Agency provided him " 'reasonable services.' " He challenges, in particular, the Agency's failure to provide him visitation of any kind for most, or all, of the 18-month review period. This challenge requires us to " 'review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings *based on the clear and convincing evidence standard.*' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239, disapproved on other grounds by *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995 [rejecting contention that clear and convincing standard of proof disappears on appeal].) We agree

with Father that evidence of the Agency's efforts to provide reasonable visitation services fell short of this standard.

" 'Visitation is a critical component, probably the most critical component, of a reunification plan.' " (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 673.) "To promote reunification, visitation must be as frequent as possible, consistent with the well-being of the child. (§ 362.1, subd. (a)(1)(A).)" (*Serena M.*, at p. 673.) An important caveat to this rule is that "No visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) Under this standard, the juvenile court may suspend or deny visitation if "such visitation would be inconsistent with the physical or emotional well-being of the child," which, in essence, requires a basic detriment finding. (*In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1102; see also *In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581, disapproved on another ground in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1010, fn. 7.)

In this case, the juvenile court did not find that granting Father visits would jeopardize the physical or emotional safety of the Minors. Instead, the court ordered at the 12-month review hearing that visitation between Father and the Minors occur, but it left the specifics to the Agency. The court may have intended that the Agency would arrange therapeutic visitation as soon as it thought this was appropriate. But the Agency seems to have misinterpreted the court's orders as allowing—perhaps even requiring—the Agency to deny Father visitation altogether. Repeatedly, at the 18-month review hearing, the child welfare workers assigned to this case testified to their "understanding" that a detriment finding had been made and court "orders [were] in place which prevented the Agency from being able to facilitate visits between Jaden and Javon and [Father]." If there was any

11

such finding or order, we do not find it in the record, and the Agency has not brought it to our attention.

We conclude that the juvenile court's wholesale delegation to the Agency was improper. "Case law consistently holds that the juvenile court cannot delegate the decision whether visitation will occur to any third party, including the child, the social services agency, or the guardian." (*In re Korbin Z.* (2016) 3 Cal.App.5th 511, 516.) " 'A visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner,' " but " ' "ultimate supervision and control . . . must remain with the court." ' " (*Id.* at p. 517.) Thus, a court order that states nothing more than, a "father shall have supervised visitation with [the minor] as frequent as is consistent with the well-being of [the minor]" is an order that improperly delegates judicial authority to the social services agency regarding whether visitation will occur at all. (*In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1135-1136.)[2] In the case before us, the visitation orders routinely took this open-ended form, which became problematic when the Agency began denying Father visitation with the Minors—not as a temporary emergency measure until the matter could be addressed in court

---

[2] Although appellant's opening brief made this argument clearly and at length, respondent's brief does not address the argument at all. We think it important to acknowledge, however, that a juvenile court may use open-ended language, such as ordering that " '[v]isitation rights be granted to [a parent] as consistent with the well-being of the minor[s], and at the discretion of Child Protective Services as to the time, place and manner,' " when, for instance, the court *also* specifies that the parent has the "right to visit the minors 'regularly.' " (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1371–1372, 1373-1375.) Together these orders do not delegate to the agency "the absolute discretion to determine whether any visitation occurs." (*Id.* at p. 1374.)

but for the *entire* 18-month review period, during which the case came to court repeatedly.

Indeed, for more than a year Father had no visits with the Minors, and the only explanation we find for this in the record is evidence that (a) the Agency misunderstood what the juvenile court ordered at the 12-month review hearing, and (b) the Minors' therapist told the child welfare worker over the phone that she thought the Minors were still afraid of Father, although they said otherwise. To be sure, there is also evidence that one of the Minors had serious behavioral issues and that, for a time, both Minors expressed a fear of Father and a desire not to see him, but we cannot find from this evidence, as the Agency urges, that substantial evidence "support[s] the finding that visitation with Father would be detrimental to the children," because we cannot find any evidence that such a finding was ever made. Instead, the juvenile court ordered that Father receive visitation during the review period. Yet, the Agency arranged not a single visit. We thus cannot conclude that substantial evidence supports a finding, at the clear and convincing level, that Father received reasonable services.

More than four years have elapsed since the Minors were removed from their home, so what is now the appropriate remedy? "[A] parent who is denied reasonable services between the 12- and 18-month hearings is not statutorily entitled to an automatic extension of services at the 18-month review." (*Michael G. v. Superior Court, supra,* 14 Cal.5th at p. 634.) The juvenile court may "terminate services . . . even if it determines that the parent did not receive reasonable reunification services in the immediately preceding 12- to 18-month review period." (*Ibid.*) But a parent in Father's shoes may also "seek a discretionary . . . extension of reunification services under section 352. In determining whether to grant relief, the juvenile court

must consider whether there are exceptional circumstances constituting good cause" and whether an extension of services "would be contrary to the child's interest." (*Id*. at p. 635)

In this case, because the juvenile court erroneously concluded Father received reasonable services leading up to the 18-month review hearing, Father did not have the opportunity to bring a motion under section 352. We accordingly remand to afford him that opportunity and, should he avail himself of it, to allow the juvenile court in the first instance to adjudicate the motion. We express no view on the dispositive questions of where the Minors' interests now lie or whether this is an exceptional case under section 352.

## DISPOSITION

The orders of August 2, 2022 terminating services to Father and establishing legal guardianship as the Minors' permanent plan are vacated, and the case is remanded for further proceedings consistent with this opinion.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

*In re Javon H. et al.* (A167362)

14