Filed 8/21/25  In re Ja.H. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Ja.H., et al., Persons Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.H., Defendant and Appellant. | B340834, consolidated with B342262, B341238, & B342264 (Los Angeles County Super. Ct. Nos. 24CCJP01440, 24CCJP01441, & 24CCJP01435) |

APPEAL from judgments of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Senior Deputy County Counsel, for Plaintiff and Respondent.

Janette Freeman Cochran, under appointment by the Court of Appeal, for minor D.C.

\* \* \* \* \* \*

J.H. (father) is the father of a teen girl and two infants (the minors). The juvenile court assumed dependency jurisdiction over the minors after finding that father had sexually abused minors' teenage half-sister K.F.—plying her with alcohol and drugs, raping her on numerous occasions, and video recording his adult son raping her. The court later terminated jurisdiction with exit orders granting sole legal and physical custody of the minors to their mothers and ordering no visitation for father with the two infants and very limited monitored visitation once per year with the teenager. We hold the juvenile court's visitation orders were not an abuse of discretion and accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The family*

Father has three minor children—D.C. (a 14-year-old girl), J.H. III (a 13-month-old boy), and Ja.H. (an 8-month-old girl).[1] Each has a different mother.

---

[1] These were the minors' ages at the initiation of dependency proceedings.

**B.** *Father's repeated sexual assault of a half-sibling*

In early 2024, K.F.—who is the daughter of the woman with whom father had Ja.H, and who was at that time 14 years old—was raped by father and by her adult stepbrother J.H., Jr. K.F. subsequently reported during a forensic interview that father had plied her with alcohol and drugs before the sexual assaults. Father had also filmed her being raped by J.H., Jr. In May 2024, K.F. called 911 to report the assaults because, when she told her mother, her mother did not believe her. Some of the videos were later recovered, and father was ultimately charged with one count of aggravated sexual assault of a child (Pen. Code, § 269, subd. (a)(2)), two counts of committing lewd or lascivious acts with a child under the age of 14 (Pen. Code, § 288, subd. (a)), and one count of committing a lewd act on a child 14 or 15 years of age by a person 10 years older (Pen. Code, § 288, subd. (c)(1)).

Father categorically denied engaging in the sexual assaults. Instead, he insisted that *he* was the victim of K.F.'s attempts to escape responsibility for her own misconduct.

D.C. consistently denied any sexual abuse or inappropriate touching by father,[2] but she admitted she "always thought he was a little weird," because, among other things, he would go into the bathroom while K.F. was showering to observe her "ass," and had once remarked on the size of D.C.'s breasts—which made her feel uncomfortable.

---

[2] D.C. related she only learned father was her biological father a few months prior to his arrest after receiving the results of a DNA test; as a result, she and father were not "that close" and had only started to "build[] a relationship."

## II.    Procedural Background

### A.    *The petition*

Two days after K.F.'s 911 call, the Los Angeles Department of Children and Family Services (the Department) filed three separate but identical dependency petitions under Welfare and Institutions Code section 300, one petition for each of the three minors.[3]  The petitions alleged that the minors were at substantial risk of physical harm or sexual abuse as a result of father's and J.H., Jr.'s sexual abuse of K.F., and father's knowing failure to protect K.F. from J.H., Jr.'s sexual abuse of her.[4]

### B.    *Jurisdictional hearing and issuance of "exit orders"*

In September 2024, the juvenile court held a jurisdictional and dispositional hearing.  Father was present at the hearings but did not testify or introduce other evidence.  After admitting into evidence various Department reports and supporting documentation, including transcripts of the forensic interviews, and after hearing argument from counsel, the court sustained each petition's allegations, finding K.F.'s account of abuse "true and correct."

---

[3]    Undesignated statutory references that follow are to the Welfare and Institutions Code.

[4]    The petition brought on behalf of Ja.H. also alleged she was at risk due to her mother's failure to protect her and K.F.  (There were no similar failure to protect allegations made against the mothers in the other two petitions.)  The juvenile court would later strike the allegations against T.C. and find her to be non-offending.

4

The juvenile court bypassed providing father any reunification services, and subsequently terminated dependency jurisdiction through a series of exit orders. Each minor was placed with their respective mother.[5] Although the juvenile court had initially ordered that father have monitored visits with each child, and although the Department had initially recommended that father have monitored visits with all three children and then—after the forensic interview with K.F. and after learning from D.C. that she was starting to "build[] a relationship" with him and would be open to phone (but not in-person visits)— revised that recommendation to permit father to have monitored visits only with D.C. and J.H. III, the juvenile court ultimately ordered that father have "no contact" and "no visits" with Ja.H and J.H. III (the infants) after finding that father was responsible for the severe sexual abuse of K.F., which was "outrageous." Although the juvenile court had initially entered the same order for D.C., the court in the final exit order allowed father "to have monitored visits with [D.C.] a minimum of once a year for two hours."

### C. *Appeals*

As to all three children, father noticed an appeal from the juvenile court's jurisdiction findings, and from the disposition orders. At father's request we consolidated for all purposes the two Ja.H.-related appeals (case numbers B340834 and B342262)

---

[5] The juvenile court also entered a protective order precluding father from having any contact or visits with Ja.H., from which father appealed (in case number B340834). Father does not make any arguments challenging the protective order in his briefs.

5

and then, on our own motion, consolidated for argument and decision those appeals with the J.H. III- and D.C.-related appeals (case numbers B341238 and B342264).

## DISCUSSION

Father challenges the juvenile court's visitation orders as to each of the minors.[6]

### I.    Pertinent Law

When "the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child . . . the juvenile court on its own motion[] may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a); see also Cal. Rules of Court, rule 5.700.) A custody and visitation order issued under section 362.4 is commonly referred to as an "'exit order.'" (See, e.g., *In re John W.* (1996) 41 Cal.App.4th 961, 970 & fn. 13; *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.) Such exit orders remain in effect until modified or terminated by a subsequent order of the superior court. (§ 362.4, subd. (b); see also Cal. Rules of Court, rule 5.700(a).) A juvenile court has "broad discretion" in fixing the terms of an exit order at the termination of a dependency case. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) When fashioning an exit order, "the court's focus and primary consideration must always be the best

---

[6]     The Department filed a "no position" letter in the D.C. appeal because it did not oppose monitored visitation in the juvenile court. D.C. filed a respondent's brief in support of the monitored visitation order ultimately entered by the juvenile court.

6

interests of the child."[7]  (*Id*. at p. 268; accord, *In re T.S.* (2020) 52 Cal.App.5th 503, 513.)  In reaching its decision about a dependent child's best interests, the court must be guided by "the totality of a child's circumstances."  (*In re Chantal S.* (1996) 13 Cal.4th 196, 201; accord, *In re J.T.* (2014) 228 Cal.App.4th 953, 963.)

We review an exit order pursuant to section 362.4 for abuse of discretion.  (*In re M.R.* (2017) 7 Cal.App.5th 886, 902; *In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.)  "'"The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child."'"  (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186-187.)

## II.     Analysis

The juvenile court ultimately ordered monitored visitation between father and D.C. at least once per year, but father argues this was too little.  In our view, however, the court acted well within its discretion to award the minimal visitation that it did; indeed, even the no visitation order the court was initially inclined to make would have been within the bounds of reason in light of father's deeply aberrant sexual abuse of one of his stepdaughters.  (E.g., *In re I.J.* (2013) 56 Cal.4th 766, 778; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 969; see also *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179 [exposing children to "risk of serious physical . . . harm" is not in child's "best interest"]; *In re*

_____

[7]     The same standard also applies under section 361.2.  (*In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1283 [when making a determination under section 361.2 "'the court's focus and primary consideration must always be the best interests of the child'"].)

*Kadence P.* (2015) 241 Cal.App.4th 1376, 1383 [juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child"], overruled on other grounds by *In re N.R.* (2023) 15 Cal.5th 520, 560, fn. 18.)  Though D.C. was willing to maintain some limited contact with father, declining to order more frequent visitation was not an abuse of discretion in light of father's sexual abuse of K.F. and D.C.'s opposition to anything more than episodic telephone contact.

For essentially the same reasons, the no visitation orders the juvenile court made for Ja.H. and J.H. III were also not an abuse of discretion.  Father's sexual abuse of another of his children, which the juvenile court fairly labeled "outrageous," established any interaction between him and his other minor children was fraught with risk and not in their best interests. Insofar as father argues the no visitation orders for Ja.H. and J.H. III cannot be squared with the limited visitation order for D.C., we disagree.  The court could reasonably have relied on D.C.'s older age and relatively greater autonomy (she was old enough to have developed some relationship with father, old enough to express a desire to maintain some contact with him, and old enough to be better able to protect herself from abuse) to permit limited visitation that it believed would not be in the best interests of the younger children.  In addition, father's custodial status is irrelevant to the analysis because what poses the risk to the half-siblings—and hence justifies curtailed or prohibited visitation—is father's conduct, and that risk exists wholly apart from whether or not he is incarcerated.

8

DISPOSITION

The juvenile court's orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, P. J.

HOFFSTADT

I concur:

_____, J.

KIM (D.)

In re Ja.H. et al.
B340834, B342262, B341238, & B342264


BAKER, J., Concurring in Part and Dissenting in Part


I agree there is no basis to reverse the juvenile court's visitation order as to teenage daughter D.C.—which no party other than father J.H. (Father) challenges on appeal—in light of his shocking sexual abuse of his other teenage daughter K.F. I disagree, however, with affirmance of the no visitation orders for toddler son J.H. III and toddler daughter Ja.H. because the record, and the visitation order for D.C. in particular, leaves me convinced the orders for J.H. III and Ja.H. are not the product of a reasoned best interests determination. Allowing visitation with the one child (D.C.) who is most similarly situated to sexual abuse victim K.F. while denying any visitation with the other two children makes no rational sense—and all the more so when considering the juvenile court granted Father monitored visitation with Ja.H. and J.H. III earlier in the dependency proceedings.

Had the juvenile court made the same visitation order for all three children—whether a no visitation order or an order for limited once-per-year monitored visitation of the type made as to D.C.—I likely would have agreed there was no abuse of discretion. But that is not the ruling the court made, and I am unconvinced the difference in treatment reflects a determination that was properly focused on the children's best interests. (See,

e.g., *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 516 ["the juvenile court cannot delegate the decision whether visitation will occur to any third party, including the child"].)

BAKER, J.